UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEBORAH S.[1], | |
| Plaintiff, | |
| v. | CASE NO. 1:20-CV-00002-MGG |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of the Social Security Commissioner's ("Commissioner's") decision dated October 29, 2019, denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").

This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**I.    OVERVIEW OF THE CASE**

This matter concerns Plaintiff's application for DIB benefits filed on June 29, 2017, alleging that Plaintiff was disabled from January 1, 2005,[2] through her date last

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

[2] Plaintiff's initial application alleged that her disability onset date was January 1, 2006. At a hearing, the Plaintiff requested an amended onset date of January 1, 2005, which the administrative law judge ("ALJ") accepted.

insured, December 31, 2013. On December 6, 2018, an administrative law judge ("ALJ") denied Plaintiff's application for benefits, finding that she was not disabled from January 1, 2005, through December 31, 2013. On October 29, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's December 2018 decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Plaintiff sought judicial review of the Commissioner's decision on January 2, 2020. Plaintiff filed her Opening Brief on October 2, 2020. The Commissioner filed his Memorandum in Support of the Commissioner's Decision on November 13, 2020. This matter became ripe on December 1, 2020, with no reply filed by Plaintiff. *See* N.D. Ind. L.R. 7-3(d).

## II.   ANALYSIS

### A.   Standard of Review

This Court has the authority to review disability decisions by the Commissioner in a limited way pursuant to 42 U.S.C. § 405(g). *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The Court's deference to the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or where they fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013). Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the relevant issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). In addition, "[t]he ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Therefore, the question on judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). When reviewing the Commissioner's findings under Section 405(g), this Court cannot reconsider facts, reweigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan,* 985 F.2d 334, 336 (7th Cir. 1993). If, however, an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Finally, where it is clear the ALJ's decision

3

would not be overturned by remanding the issue for further consideration, the doctrine of harmless error applies to prevent remand. *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003).

### B. Disability Standard

To qualify for DIB, a claimant must be "disabled" under Sections 216(i), 223(d), and 1615(a)(3)(A) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity ["SGA"] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry for evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (or, if the impairments do not, a determination of the claimant's residual functional capacity ("RFC")); (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 404.1520; *see also Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford,* 227 F.3d at 868.

4

### C.     Discussion

#### 1.     Findings by the ALJ

Plaintiff, who was 55 years old as of the date last insured, worked as an Administrative Clerk, Front Desk Clerk, and Administrative Assistant as defined by the Dictionary of Occupational Titles ("DOT"). [DE 19 at 93]. Plaintiff states that she has suffered from degenerative disc disease, post surgical fusion; asthma; sleep apnea; fibromyalgia; depression; and migraines. [DE 19 at 27, 64-85]. In finding that Plaintiff was not disabled under the Act, the ALJ conducted the five-step sequential inquiry established in 20 C.F.R. § 404.1520. At Step One, the ALJ found that the Plaintiff did not engage in SGA from the date of onset (January 1, 2005) through the last date insured (December 31, 2013). [DE 19 at 27]. At Step Two, the ALJ identified Plaintiff's degenerative disc disease, post-surgical fusion; asthma; sleep apnea; and fibromyalgia as severe impairments pursuant to 20 C.F.R. § 404.1520(c). [DE 19 at 27]. At this step, the ALJ also found that Plaintiff's depression was a non-severe impairment. [DE 19 at 27]. The ALJ's decision did not list migraine headaches as a severe or non-severe impairment.

At Step Three, the ALJ concluded that none of Plaintiff's severe impairments or combination of impairments met or medically equalled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [DE 19 at 28]. Therefore, in accordance with 20 C.F.R. § 404.1520(e), before proceeding to Step Four, the ALJ proceeded to assess the Plaintiff's RFC.  The ALJ found that, through the date last insured, Plaintiff retained the RFC to:

5

> perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could not use ladders, ropes or scaffolds; she could not perform work on uneven or slippery surfaces; she could occasionally climb ramps or stairs, stoop, crouch, crawl, kneel, or balance; she could not perform work at unprotected heights or around dangerous machinery.

[DE 19 at 29].

Here, the ALJ also addressed Plaintiff's impairment-related pain and symptoms[3] in the RFC in two steps. SSR 16-3p; 20 C.F.R. § 404.1529(a). [DE 19 at 31]. The ALJ explained that he first must find medically determinable impairment(s) that could be reasonably expected to produce Plaintiff's pain or other symptoms. 20 C.F.R. § 404.1529(b). [DE 19 at 30]. Then, once an impairment can be reasonably expected to produce Plaintiff's pain or other symptoms, the ALJ must evaluate "the intensity, persistence, and limiting effects" of these impairments to determine the extent to which they limit Plaintiff's ability to work. 20 C.F.R. § 404.1529(c). [DE 19 at 30]. The ALJ explained that he reviewed objective medical evidence in the record as well as other kinds of evidence to assess the consistency of Plaintiff's statements, including: evidence of the location, duration, frequency, and intensity of pain or other symptoms; and evidence of any treatment, other than medication, for relief of pain or other symptoms. *See* SSR 16-3p; 20 C.F.R. § 404.1529(c)(3) [DE 19 at 30–33].

---

[3] Plaintiff alleged the following symptoms: pain, stiffness, fatigue, radiculopathy, headaches, shortness of breath, as well as difficulty lifting, standing, sitting, walking, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, using her hands, remembering, understanding, following directions, making decisions, and interacting with others. The ALJ stated that Plaintiff also contends she can only lift/carry eight pounds occasionally, less than five pounds frequently, stand for less than an hour and sit for less than two hours in an eight-hour day. While Plaintiff can occasionally push, pull, reach, and handle, Plaintiff indicates that she is not able to perform many other postural activities or handle complex or detailed tasks. [DE 19 at 30-31].

6

The ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to produce some of her symptoms. [DE 19 at 32]. However, the ALJ also found that the evidence was not consistent with the Plaintiff's statements about the intensity, persistence, and limiting effects of her impairments, stating that the medical evidence was "somewhat sparse" and that it contained "few useful examinations aside from numerous function test and diagnostic imaging reports, all of which indicated mild findings without significant radiculopathy." [DE 19 at 33]. The ALJ instead found that the evidence supported an RFC of light work, but that Plaintiff could not perform heavy lifting, frequent posturing maneuvers, or work around environmental hazards due to her impairments. [DE 19 at 33].

At Step Four, based in part on the testimony of the vocational expert ("VE"), the ALJ found that the Plaintiff was "capable of performing past relevant work" as an administrative clerk, administrative assistant, and front desk clerk. [*Id*. at 33]. This work did not require activities that would be precluded by the Plaintiff's RFC. [*Id*.]. Accordingly, the ALJ found that Plaintiff should be able to perform the same relevant work as before, and she was not disabled under the Act. [*Id.*]

**2. Issues for Review**

Plaintiff challenges the ALJ's RFC determination, stating that the ALJ erred by failing to incorporate evidence of limitations based on all medically determinable impairments and by not considering the combined impact of these impairments. [DE 21 at 8, 13–15]. Specifically, Plaintiff argues that the ALJ erred by not including RFC limitations in three areas: (1) limitations related to Plaintiff's cervical spine, (2)

7

limitations relating to the use of Plaintiff's upper extremities, and (3) limitations relating to Plaintiff's migraine headache triggers.

### a. Cervical Spine Limitations

In challenging the RFC analysis, Plaintiff contends that the ALJ erred by not including limitations in the RFC related to "cervical flexion, extension, lateral flexion, and rotation" despite evidence in the record that Plaintiff had a limited range of motion in her cervical spine [DE 21 at 13]. Plaintiff points to evidence from her orthopaedic physician as well as to her husband's testimony, noting that neither were included in the ALJ's RFC analysis. [DE 21 at 13].

The ALJ did address evidence related to Plaintiff's cervical spine as part of the ALJ's discussion that Plaintiff's evidence did not support her statements regarding the extent of her disabling symptoms and limitations. The ALJ specifically discussed findings contained in CT scans, EMG studies, and routine follow-up examinations of Plaintiff's cervical spine during the relevant period. [DE 19 at 31]. The ALJ discussed a December 2005 CT report of Plaintiff's cervical spine, noting that the report ultimately concluded "satisfactory appearance of the anterior interbody trabecular metal implant at C5-6 and C-C7, with good position of the anterior bone plate and cancellous screws." [DE 19 at 31, DE 19-1 at 54]. The ALJ discussed other studies that observed degenerative and post-operative changes to Plaintiff's thoracic and lumbar spine, as well as other issues, but also explained that these records concluded that "no focal disc herniation was seen in the lumbar, thoracic, or cervical spine." [DE 19 at 31, DE 19-1 at 36-38]. The ALJ also discussed a 2009 MRI ordered by Plaintiff's orthopaedic physician, observing

8

that while this showed disc degenerative changes and slight anterolisthesis of segments of Plaintiff's cervical spine, it also showed "normal anatomic bone alignment and only mild degenerative changes prior to her date last insured." [DE 19 at 31 (referencing Exhibit 5F), DE 19-1 at 34, 36].

Further, the ALJ also discussed examination records from 2013, noting that while these records showed that Plaintiff had tender bilateral anterior cervical nodes, "there is little indication of significant physical findings otherwise, as [Plaintiff] demonstrated normal strength, tone, range of motion, and gait." [DE 19 at 31, DE 19 at 461, 462, 465]. The ALJ also discussed Plaintiff's chiropractic treatment records but found that these were mostly illegible and contained few objective findings helpful in determining Plaintiff's RFC. [DE 19 at 31, DE 19-1 at 1-13].

Despite this discussion, Plaintiff remains concerned that the ALJ failed to consider evidence that would support additional RFC limitations regarding her range of motion in her cervical spine. First, Plaintiff points to a clinical encounter note from a 2009 visit with her orthopaedic physician. [DE 21 at 13, DE 19-1 at 21-22]. While this clinical encounter note does state that Plaintiff's range of motion in her neck was limited because of pain, the note also recommends an MRI of the cervical spine "to complete the diagnosis." [DE 19-1 at 21]. The 2009 MRI ordered by Plaintiff's orthopaedic physician, which the ALJ did discuss in his findings, showed mild degenerative changes and slight anterolisthesis on segments of Plaintiff's spine. [DE 19-1 at 34]. Neither the clinical encounter note nor the subsequent MRI discuss how the Plaintiff's range of motion was limited or provide any restrictions. Plaintiff's husband similarly

9

testified about her cervical spine: "with her limited range of motion in her neck, you know, I knew she wasn't going to be able to do computer work." [DE 21 at 13, DE 19 at 88]. This testimony also fails to describe the degree of limitation in her range of motion that would support the need for further limitations. [DE 19 at 88].

The ALJ need not discuss every piece of evidence presented; rather, he must provide an accurate and logical bridge between the evidence and his conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ discussed relevant evidence related to Plaintiff's cervical spine as part of determining Plaintiff's RFC. In discussing this evidence, the ALJ highlighted abnormalities or other issues with Plaintiff's cervical spine, but also noted findings from the evidence that did not support limitations stated by Plaintiff to provide the requisite "logical bridge." *See Denton v. Astrue*, 596 F.3d 419, 425-26 (7th Cir. 2010); *see also O'Connor-Spinner*, 627 F.3d at 618. Further, while the ALJ did not specifically address the orthopaedic physician's statement in the clinical encounter note, he did not avoid discussing a line of evidence inconsistent with his ruling, especially as he did discuss the results of the MRI ordered by the orthopaedic physician based on that visit. *See Denton,* 596 F.3d at 426; *see also Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009).

Finally, Plaintiff bears the burden of providing evidence establishing the degree to which her impairments limit her functional capacity. *See* 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3). None of the records discussed by the ALJ nor the records Plaintiff replies upon here provide any limitations or restrictions on the Plaintiff due to pain or symptoms in her cervical spine.

10

### b. Upper Extremity Limitations

Plaintiff also challenges the RFC analysis contending that the ALJ erred by failing to include limitations in the RFC related to handling, fingering, and reaching despite evidence in the record showing damage to Plaintiff's upper extremities. [DE 21 at 14]. In support, Plaintiff points to x-ray reports describing this degeneration.

The ALJ did discuss medical evidence regarding Plaintiff's upper extremities as part of his findings that the evidence did not support her statements regarding her symptoms' limiting effects. The ALJ observed that a 2005 EMG showed abnormalities consistent with chronic right c7 radiculopathy and mild ulnar neuropathy, but that the EMG was not consistent with other issues, including carpal tunnel syndrome or active cervical radiculopathies. [DE 19 at 31, DE 19-1 at 59]. The ALJ also explained that while a 2005 MRI showed mild degenerative changes as well as post-operative changes, it did not include findings that "indicated an etiology for the claimant's reported right upper extremity symptoms." [DE 19 at 31, DE 19-1 at 47]. The ALJ also discussed a fibromyalgia evaluation from September 2013, explaining that while Plaintiff complained of several diffuse myalgias and severe tender points, her "physical examination was largely normal, with no areas of tenderness or pain behaviors recorded." [DE 19 at 31, 462].

However, Plaintiff also directs the Court's attention to x-ray reports from 2012 to show that she requires additional limitations. X-ray reports of Plaintiff's wrists reveal "mild degenerative changes of osteoarthritis," but as Plaintiff also concedes, these wrist x-ray reports also show "no fracture, bone destruction, or erosion." [DE 21 at 14, DE 19

11

at 125, 381]. Similarly, 2012 x-ray reports of Plaintiff's right hand similarly noted a lack of fracture, destruction, or erosion and noted normal joint spacing and anatomical bone alignment. [DE 21 at 14, DE 19 at 126, 381]. X-ray reports of her left hand also note "some minimal" degenerative changes to a joint in Plaintiff's left ring finger, but also show no fracture or bone destruction. [DE 19 at 125, 381].

Indeed, the x-ray report records show that Plaintiff dealt with degenerative changes to her upper extremities, but this evidence on its own does not show that Plaintiff's ability to engage in work-related activities was limited based on this condition. The limiting impact of an impairment is the determinative issue in these proceedings. *See Melanie W. v. Saul*, No. 1:19-cv-403, 2020 WL 3056309 at *4 (N.D. Ind. June 2, 2020) (citing *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)(stating that the relevant inquiry "is not the existence of these various conditions . . . but their severity and, concretely . . . whether they have caused her such pain that she cannot work full time") and *Johnson v. Colvin*, No. 2:13-cv-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) ("The mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities.")). Plaintiff has not pointed to other evidence that would provide support for limitations related to handling, fingering, and reaching. Here, the ALJ discussed medical evidence related to Plaintiff's upper extremities and explained how the findings in the record supported the ALJ's RFC analysis rather than the disabling symptoms alleged by Plaintiff, thereby providing the requisite "logical bridge" between the evidence and his conclusion. *See Frain v. Saul*, No. 1:18-CV-155-HAB, 2019 WL 4877368, at *3 (N.D. Ind.

Oct. 3, 2019), appeal dismissed, No. 19-3381, 2020 WL 2974019 (7th Cir. Feb. 28, 2020); see also *Craft*, 539 F.3d at 673. Further, Plaintiff has not shown that the ALJ avoided an entire line of evidence contrary to his findings by failing to discuss the x-ray reports or that information from the x-ray reports would change the ALJ's RFC assessment. *See Denton*, 596 F.3d at 426; *see also Terry*, 580 F.3d at 477.

Finally, Plaintiff cites to *Hoskins v. Berryhill*[4] as similar to her case. No. 1:18cv23, 2018 WL 5262939 (N.D. Ind. Oct. 23, 2018). In *Hoskins*, the ALJ found numerous severe impairments, including bilateral hand numbness with some paresthesia most consistent with carpal tunnel syndrome and neuropathy of the bilateral upper extremities. *Id.* at *2. Despite these impairments, the ALJ found that the plaintiff retained an RFC that permitted "frequent handling and fingering." *Id.* at *2, *4. The plaintiff in *Hoskins* argued that, based on the evidence in the record, the ALJ's RFC did not satisfy the logical bridge requirement. *Id.* The court in *Hoskins* agreed, finding that the evidence showed that the plaintiff clearly had problems with handling and fingering and that substantial evidence did not support the ALJ's RFC in light of these conditions. *Id.* However, the facts in *Hoskins* are distinguishable from this matter. Here, Plaintiff did not show evidence to support bilateral hand numbness or carpal tunnel syndrome as severe impairments. Further, the ALJ in this matter discussed evidence related to Plaintiff's upper extremities and explained that it did not support Plaintiff's contentions

---

[4] Plaintiff also cites to *Frain v. Saul*, stating that the court in *Frain* found that the ALJ's limitations for handling and fingering were not supported by substantial evidence. [DE 21 at 14]. However, the court in *Frain* found the opposite, finding that the ALJ repeatedly referenced evidence in the record regarding the plaintiff's upper extremities and affirming the decision of the Commissioner. 2019 WL 4877368, at *1.

of numbness and issues with her hand, nor did it support a diagnosis of carpal tunnel syndrome. [DE 19 at 31]. Accordingly, Plaintiff's reference to *Hoskins* is not persuasive.

### c. Migraine Headache Limitations

Lastly, Plaintiff maintains that the ALJ erred by not including limitations in the RFC regarding her migraine headache triggers, which include humidity and weather extremes, stress, and lights. [DE 21 at 15].

The ALJ did not find that migraines were one of Plaintiff's severe or non-severe medically determinable impairments, nor did the ALJ discuss migraines as part of his analysis at Step Two of the five-step sequential inquiry. [DE 19 at 27]. At Step Two, an ALJ determines whether any impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). Accordingly, the first inquiry at Step Two is whether a claimant has a medically determinable impairment. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source" and "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. A claimant's subjective symptoms will not suffice. 20 C.F.R. § 404.1529(a). If the evidence supports that a claimant has an impairment, the next inquiry is whether it is severe. *See* 20 C.F.R. § 404.1521. After determining the severity of any impairments, the ALJ moves on to the Step Three of the sequential inquiry (1) to determine whether the impairments are equal to the listings in 20 C.F.R. 404, or (2) to determine a claimant's RFC, including whether the impairments produce symptoms that have a limiting effect on the claimant's ability to work. 20 C.F.R. §§ 404.1520; 404.1529(c)–(d).

14

Plaintiff points to visit notes for an evaluation of hyperlipidemia in 2011 to support that she has migraine headaches. Migraines were listed in the section of this visit note that details Plaintiff's past history. [DE 21 at 15; DE 19 at 506]. The Court also observes that the administrative record contains a head CT from 2009 where Plaintiff reported headaches and other symptoms. The results of the scan were normal. [DE 19 at 445]. The administrative record also includes visit notes from two 2012 visits at Dekalb Medical mentioning headaches. One visit was a follow up for Plaintiff's hypertension, where Plaintiff reported headaches as one of her current symptoms. [DE 19 at 483]. At the other 2012 visit, Plaintiff complained of having a migraine over the prior weekend and still had a headache.[5] [DE 19 at 488]. Although this evidence does show that Plaintiff complained of headaches during the relevant period, this evidence does not consist of medically acceptable and laboratory diagnostic techniques that show migraines as an impairment. *See* 20 C.F.R. § 404.1521. Plaintiff does not point to other evidence that would support her migraines as a medically determinable impairment.

Accordingly, the Court cannot find that the ALJ erred by failing to identify Plaintiff's migraines as an impairment of any grade at Step Two, and consequently, by not including migraine trigger limitations in Plaintiff's RFC at Step Three. Furthermore, a remand for consideration of the impact of migraine headache triggers is also unnecessary based on the doctrines of futility and harmless error. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *see also Keys*, 347 F.3d at 994-95.

---

[5] Plaintiff did include other documentation about headaches in the record, but these records are not within the relevant time. *See, e.g.*, DE 19 at 346-47 (a headache questionnaire completed by Plaintiff in May 2018).

**III.   CONCLUSION**

For the reasons stated above, the Commissioner's decision is **AFFIRMED**. The Clerk is instructed to enter judgement in favor of the Commissioner.

**SO ORDERED** this 20th day of October 2021.

                                                s/Michael G. Gotsch, Sr.
                                                Michael G. Gotsch, Sr.
                                                United States Magistrate Judge